## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Robert G., Jr., | Case No. 21-cv-00660 (DSD/HB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | |
| Defendant. | |

HILDY BOWBEER, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff Robert G., Jr., seeks judicial review of a final decision by the Commissioner of Social Security denying his application for disability insurance benefits. This matter is before the Court on the parties' cross-motions for summary judgment [ECF Nos. 20, 22], which were referred to the undersigned for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Court recommends that Plaintiff's motion be denied and the Commissioner's motion be granted, and this matter be dismissed.

### I.     BACKGROUND

#### A.     Procedural Background

Plaintiff filed an application for Disability Insurance Benefits (DIB) on January

26, 2018, claiming disability beginning on April 1, 2017.  (T. 15, 230, 231-32[1].)  The Social Security Administration (SSA) denied the application at the initial and reconsideration levels.  (R. 94, 113.)  Plaintiff, his wife, a medical expert, and a vocational expert testified before an administrative law judge (ALJ) on June 3, 2020.  (R. 47–77.)  On July 28, 2020, the ALJ issued an unfavorable decision finding Plaintiff not disabled.  (R. 15–36.)  The SSA Appeals Council denied Plaintiff's request for review without substantive analysis.  (R. 1–3.)  Plaintiff brought this suit under 42 U.S.C. § 405(g).  [ECF No. 1.]  The Commissioner has filed an answer, and the parties now move for summary judgment.  [ECF Nos. 20, 22.]

### B.     Relevant Records

The Court will recount the record evidence only to the extent it is helpful for context or necessary for resolution of the specific issues presented in the parties' motions.  Plaintiff challenges the legal adequacy of certain steps of the ALJ's determination, not the evidentiary sufficiency of the ALJ's factual findings.  (Pl.'s Mem. at 2 [ECF No. 21].)  Therefore, the Court does not recount any medical or other evidence in the record.  The Court instead provides only a brief overview of the ALJ's determination and recounts relevant portions of the hearing transcript and the determination when discussing Plaintiff's arguments.

The ALJ found at step one of the evaluation process that Plaintiff had not engaged in substantial gainful activity since April 1, 2017.  (R. 17.)  At step two the ALJ found

---

[1] The Court cites the Social Security Administrative Record as "R." and uses the pagination that appears in bold in the lower right corner of each page.

that Plaintiff had the following severe impairments: diabetes mellitus, vestibular disorder, chronic headaches, cervical spinal stenosis, and bilateral hearing loss. (R. 18.) At step three the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24.) At the start of step four, the ALJ found that Plaintiff had the following RFC:

> perform light work . . . with the following limitations: never climbing ladders, ropes or scaffolds; rarely reaching overhead, bilaterally; no exposure to noise above a moderate level, meaning typically found in a retail or business office setting; no exposure to dangers to life or limb in the workplace; and not required to work in high, exposed places.

(R. 24.) Based on the RFC, the ALJ found at step four, "The claimant is capable of performing past relevant work as an accountant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)." (R. 34.) Accordingly, the ALJ found Plaintiff was not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iv) ("At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled."). However, the ALJ went on to make "alternative findings" at step five, and concluded that there were "other jobs that exist in significant numbers in the national economy that the claimant also can perform, considering the claimant's age, education, work experience, transferable skills, and residual functional capacity (20 CFR 404.1569, 404.1569(a) and 404.1568(d))." (R. 35.)

## II. DISCUSSION

Plaintiff argues the ALJ legally erred by failing to include mental impairments in the RFC and failing to analyze the transferability of his skills to new occupations. Plaintiff originally also argued the ALJ lacked the constitutional authority to decide his application, but withdrew that argument in his reply brief. (Pl's Reply at 6, n. 1 [ECF No. 24].)

### A. Standard of Review

The ALJ follows a five-step sequential evaluation process for determining disability for SSI. 20 C.F.R. § 416. 404.1520(a)(4). The five steps are: (1) whether the claimant's work activity, if any, is substantial gainful activity; (2) whether the claimant has any severe, medically determinable impairments meeting the duration requirement; (3) whether one or more of those impairments meets or medically equals the criteria of a listed impairment; (4) whether the claimant's residual functional capacity (RFC) allows her to do past relevant work; and (5) whether the claimant's RFC and age, education, and work experience allow her to adjust to other available work. *Id.* (a)(4)(i)–(v). If the ALJ determines at any step that the claimant is disabled or not disabled, the ALJ halts the evaluation. *Id.* (a)(4).

The ALJ must assess a claimant's mental impairments in a particular way, colloquially called the "psychiatric review technique" (PRT) or "special technique." 20 C.F.R. § 404.1520a. This requires an assessment of the claimant's degree of functional limitation in four broad areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage

4

oneself. *Id.* (c). The ALJ must rate the functional limit in each area as none, mild, moderate, marked, or severe. *Id.* The PRT is used to determine severity at step two and whether a listing is satisfied at step three. *Id.* (d). If no listing is satisfied, the findings in the PRT are used in shaping the RFC. *Id.*

Judicial review of the Commissioner's denial of benefits is limited to determining whether the ALJ made a legal error and whether substantial evidence in the record as a whole supports the decision. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). "Substantial evidence in the record as a whole requires a more searching review than the substantial evidence standard." *Grindley*, 9 F.4th at 627; *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). A court must consider evidence that fairly detracts from the ALJ's decision. *Grindley*, 9 F.4th at 627. But a court may not "reweigh" the evidence or reverse the ALJ's decision "merely because substantial evidence would have supported an opposite decision." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Id.* A court will disturb the ALJ's decision only if it finds from the evidence as a whole that the decision "falls outside the available zone of choice." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021).

A court must also ensure the ALJ adequately explained her findings and conclusions. The ALJ's determination must indicate which evidence the ALJ relied on

and which she rejected, and her reasons for doing so, but she need not cite specific facts supporting specific findings and conclusions. *See Vance v. Berryhill*, 860 F.3d 1114, 1117–18 (8th Cir. 2017) (holding ALJ's findings at step four cured lack of elaboration at step three); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (holding that the ALJ need not discuss every piece of evidence and not citing evidence does not indicate the ALJ did not consider it). But "inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand" if they might change the outcome of the determination; an ALJ, not a reviewing court, must resolve those issues. *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005). *See also Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822–23 (8th Cir. 2008) (reversing when the ALJ's factual findings were insufficient for the court to conclude whether substantial evidence supported the determination); *David S. v. Saul*, No. 19-CV-3137 (ADM/LIB), 2021 WL 467348, at *3 (D. Minn. Jan. 25, 2021), *report and recommendation adopted*, 2021 WL 465281 (D. Minn. Feb. 9, 2021) ("a reviewing court cannot search the record to find other grounds to support the decision of the ALJ" when the decision does not provide that support) (cleaned up).

  **B. Whether the ALJ Erroneously Failed to Consider and Incorporate Mental Functional Limitations into Plaintiff's RFC**

Plaintiff argues that the ALJ erred by not considering the impacts of mental limitations in the RFC and by failing to include any mental limitations in the hypothetical posed to the vocational expert. (Pl's Mem. at 5–9.) The Commissioner argues that the ALJ adequately considered the evidence of mental limitations before deciding to exclude

them from the RFC.  (Def's Mem. at 20–26 [ECF No. 23].)

In between the third and fourth steps, the ALJ must determine the claimant's RFC. 20 C.F.R. § 404.1545(a)(5)(1).  RFC measures the most a claimant can still do in a work setting, despite limitations caused by his impairments.  *Id.* (a)(1).  This includes the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." *Id.* (a).  To have the "residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005).

The RFC assessment is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P, 1996 WL 374184 at *3 (S.S.A. July 2, 1996).  The evidence includes "medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1545(a)(3).  The ALJ must consider the impact of all impairments, regardless of severity level.  *Id.* (e); SSR 96-8P, 1996 WL 374184 at *5 (July 2, 1996).  "[F]ailure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator overlooking" them in the RFC.  SSR 96-8P, 1996 WL 374184 at *4 (July 2, 1996).

Relevant to Plaintiff's claims, the ALJ is not required to include mental limitations in an RFC merely because he finds some level of impairment in the earlier steps of the

7

analysis. Mental limitations identified in steps two and three are not an RFC assessment; the mental RFC "requires a more detailed assessment by itemizing various functions contained in the broad categories" of limitations identified in the prior steps. SSR 96-8P, 1996 WL 374184 at *4 (July 2, 1996). *See also* 20 C.F.R. § 404.1545(c) (including in the RFC limitations from the four functional areas of the PRT). The RFC must express these mental limitations "in terms of work-related functions . . . [for example, the ability to] respond appropriately to supervision, coworkers and work situations." SSR 96-8P, 1996 WL 374184 at *6 (July 2, 1996).

Here, the Court finds the ALJ did consider mental functional limitations in the RFC analysis. At step two, the ALJ thoroughly analyzed Plaintiff's mental status exams (R. 20–24), medical reports about Plaintiff's mental state, (R. 20–24), Plaintiff's reports of his mental symptoms, (R. 20–24), Plaintiff's medications, (R. 20–24), and a timeline of Plaintiff's mental health treatment, (R. 20–24.) The ALJ found mild limitations in the four areas of mental functioning, explaining the ratings as follows:

- For understanding, remembering, or applying information:

  > [Claimant] reported that he sometimes felt like he could not think right and that he had noticed bouts of forgetfulness in which he would be unable to recall the word he wanted to say. . . . However, he denied more general memory concerns, noting that he had a pretty good memory for numbers and dates. . . . [H]is neuropsychological profile was essentially normal. . . . There was no indication that he had longstanding or acquired cognitive impairment. . . . He demonstrated average to high average general intellectual ability. . . . Performance across measures of attention/concentration, processing speed, verbal/language functions, visuoperceptual ability, learning/memory, and executive functioning predominantly ranged from average to

> high average. . . . [He] exhibited logical/goal-directed thought process, intact memory, average fund of knowledge, and/or adequate insight and judgment on several other mental status examinations. . . . In his function report, the claimant stated that he is very good at following written and spoken instructions unless he is having a bad headache.

(R. 22.)

- For interacting with others:

  > The claimant alleged that he has sometimes missed family gatherings and church activities due to not feeling well. . . . He alleged that symptoms of depression sometimes cause him to have difficulties calling people on the phone. . . . However, the claimant did not allege any problems getting along with family, friends, neighbors, authority figures, or others. . . . He reported spending time with his wife daily and other family members on a monthly basis. . . . He also reported going to church and to a coin club meeting on a weekly basis. . . . The claimant's treatment providers, examiners, and interviewers did not report significant difficulties interacting with the claimant. Rather, they described him as polite, pleasant, and/or cooperative on numerous occasions.

(R. 22-23.)

- For concentrating, persisting, or maintaining pace:

  > The claimant alleged that his conditions interfere with his ability to concentrate and complete tasks. . . . He alleged that he has very little ability to pay attention if in pain. . . . [However] the claimant's neuropsychological profile from the March 2018 testing was essentially normal. . . . The examiner observed that the claimant stayed on task and was not notably distractible or restless. . . . He persisted on difficult items. . . . He stated that once he had started a task, he typically could stay on track. . . . His auditory attention/concentration ranged from low average to high average. . . . Visuomotor processing speed was within the normal range across tasks. . . . Information processing speed was average. . . . On measures assessing cognitive flexibility, set-shifting, and cognitive inhibition, performance was average to high

9

> average. . . . [T]he claimant exhibited normal or intact attention/concentration on several other mental status examinations.

(R. 23.)

- For adapting or managing oneself:

  > The claimant alleged that he does not handle stress of changes in routine that well. . . . He alleged that he can easily get frustrated and then overwhelmed. . . . [H]is psychologically-based symptoms have been managed conservatively since the alleged onset date with medication and only a few months of outpatient therapy. . . . He typically attended his appointments unaccompanied, and his providers did not raise concerns regarding his safety, hygiene, or ability to control his behavior. As noted above, he typically presented as polite, pleasant, and/or cooperative. . . . He also typically presented with good grooming and hygiene. . . . Outside of the clinical setting, the claimant lives in a house with his wife. . . . He told the neuropsychological examiner that he was independent in managing his activities of daily living. . . . He reported being able to perform tasks such as preparing simple meals, using the dishwasher, doing some laundry, sweeping, vacuuming, shopping, driving, paying bills, handling bank accounts, and reading.

(R. 23.) The ALJ also explicitly recognized that the mental RFC required a more detailed assessment than merely the evidence considered in step two. (R. 24.)

In his RFC assessment, the ALJ did not copy and paste the substantive evidentiary analysis from step two, but instead built upon that analysis by additionally considering reports from Plaintiff and others about his activities of daily living, (R. 32, 34), additional mental status exams (R. 27–29), opinions from healthcare providers and consultants about Plaintiff's mental functioning, (R. 33–34), Plaintiff's reports of his mental symptoms, (R. 33–34), and again the timeline of Plaintiff's mental health

10

treatment, (R. 33–34.) After considering the evidence, the ALJ found Plaintiff had the RFC to

> perform light work . . . with the following limitations: never climbing ladders, ropes or scaffolds; rarely reaching overhead, bilaterally; no exposure to noise above a moderate level, meaning typically found in a retail or business office setting; no exposure to dangers to life or limb in the workplace; and not required to work in high, exposed places.

(R. 24.) The ALJ included no mental limitations in the RFC.

The combination of the evidentiary analysis from step two and the additional evidence considered in the RFC assessment satisfied the ALJ's legal obligation to consider the impact of the mild mental limitations on Plaintiff's ability to work. Plaintiff raises no issues with the factual accuracy or completeness of the ALJ's analysis, so the Court does not consider whether the analysis provides substantial evidence to support the RFC. Plaintiff argues only that the ALJ failed altogether to consider the limitations, but the determination, taken as a whole, demonstrates otherwise.

Furthermore, contrary to Plaintiff's argument, the ALJ was not required to explain in so many words why the mild mental limitations found in step two were not part of the RFC. (Pl's Mem. at 5.) As previously noted, the finding of a mild or greater impairment in steps two or three does not require the inclusion of any mental impairment in the RFC, and the RFC instead is based on all evidence of how a claimant's impairments limit their capacity to work. It is only when the evidence supports or the ALJ finds *as part of a RFC assessment* that a mental impairment limits a claimant's capacity to work that the impairment must be included in the RFC or an explanation given for its exclusion. *See*

11

*Vicky R. v. Saul*, Case No. 19-CV-2530 (ADM/ECW), 2021 WL 536297, at *13–14 (D. Minn. Jan. 28, 2021), *report and recommendation adopted sub nom.* 2021 WL 533685 (D. Minn. Feb. 12, 2021)[2]. The ALJ here met the legal requirement to examine Plaintiff's mental impairments in the RFC and made no finding that Plaintiff's mental impairments limited his capacity to work, and Plaintiff does not argue that the evidence supports a contrary conclusion. The ALJ therefore had nothing to explain.

Consequently, the ALJ's hypothetical to the vocational expert was not deficient for failing to include mental limitations. (Pl's Mem. at 3.) As the ALJ did here, an ALJ will usually rely for substantial evidence on the testimony of a vocational expert to whom the ALJ has posed questions about the ability of a hypothetical individual with the claimant's RFC to perform past relevant work. (R. 25, 73.) "In order to constitute substantial evidence, a vocational expert's testimony must be based on a hypothetical that captures the 'concrete consequences' of the claimant's deficiencies." *Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). *See also Newton v. Chater*, 92 F.3d 688, 694–95 (8th Cir. 1996) ("A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant"). Here, the hypothetical included verbatim the RFC in the ALJ's determination. As the Court has no reason to conclude the RFC was legally or factually deficient, the hypothetical captured

---

[2] This of course assumes that the ALJ has considered the impacts of mental limitations in the RFC. As explained above, the RFC is legally deficient when the ALJ fails to consider that evidence.

the "concrete consequences" of Plaintiff's impairments, and therefore was not deficient.

For the same reasons, the ALJ did not err in not considering at step four whether the mild limitations found in step two would impact his ability to return to his work as an accountant. Plaintiff argues the ALJ should have identified in the step four past-relevant-work determination the duties of an accountant that might be impacted by those limitations. (Pl's Mem. at 6–9.) But step four consideration of a claimant's ability to return to past relevant work occurs *after* the determination of the claimant's RFC. 20 C.F.R. § 404.1545(a)(5)(i). The ALJ uses the RFC specifically formulated to the claimant's greatest work abilities, not the findings of mental limitations in steps two or three, to assess a claimant's ability to do their past relevant work. 20 C.F.R. § 404.1560(b). Because the ALJ did not find any mental limitations in Plaintiff's RFC, the ALJ did not err by failing to consider mental limits on Plaintiff's ability to do his past work as an accountant or by failing to identify areas of that occupation that bore on Plaintiff's mental functioning. Accordingly, the ALJ did not err when he concluded at step four that Plaintiff was not disabled because he could do his past relevant work as an accountant. For this reason alone, the Commissioner's motion may be granted.

   **C. Whether the ALJ Erroneously Failed to Analyze the Transferability of Plaintiff's Skills**

Plaintiff next argues the ALJ erred in failing to analyze whether Plaintiff had skills from his past relevant work that were transferrable to other occupations, as required at step five when concluding that a claimant 55 years of age or older can make a move to other jobs within their RFC and available in the national economy. (Pl's Mem. at 9.)

13

The Commissioner argues the Court need not reach this argument because the ALJ appropriately found Plaintiff not disabled at step four when he concluded Plaintiff could do his past relevant work as an accountant, so the transferability of Plaintiff's skills to *other* jobs in the national economy is beside the point. (Def's Mem. at 26–27.) The Commissioner alternatively argues the ALJ properly relied on the vocational expert's testimony to find that Plaintiff had skills from his accountant work that could transfer to other jobs within Plaintiff's RFC. (*Id.*)

The Court agrees with the Commissioner that if the District Judge adopts this Court's recommended finding that the ALJ's determination of Plaintiff's RFC was not legally flawed, then there is no need to address whether the ALJ erred in the transferability analysis at step five because that analysis is of consequence only if Plaintiff is not capable of doing his past relevant work. However, because the District Judge is free to accept or reject this Report and Recommendation, the Court finds it appropriate to assess Plaintiff's claim that the ALJ's alternative findings on transferability of skills at step five were inadequate.

In step five, an ALJ determines whether there are jobs available in sufficient numbers in the national economy that a claimant can work based on his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c). A claimant with a history of skilled or semi-skilled jobs who is limited to sedentary or light exertional work may be disabled if his job skills cannot transfer. 20 C.F.R. § 404.1568(d)(1). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.00(c)–(h), 202.00(b)–(f) (discussing possible disabling lack of transferable skills). *See also* 20 C.F.R. Pt. 404,

Subpt. P, App. 2, Tables 3, 4 (individuals with a skilled or semi-skilled work experience and medium or greater exertional capacity cannot be disabled from lack of transferable skills). Generally, "[t]ransferability is most probable and meaningful among jobs in which - (i) The same or a lesser degree of skill is required; (ii) The same or similar tools and machines are used; and (iii) The same or similar raw materials, products, processes, or services are involved." 20 C.F.R. § 404.1568(d)(2). "A complete similarity of all three factors is not necessary for transferability" and it may vary from "close similarities to remote and incidental similarities among jobs." *Id.* (d)(3).

The ALJ based his findings on transferability on an exchange with the vocational expert in which he asked the expert to assume the Plaintiff's RFC, *plus* the added limitations of only sedentary work, no complex decision-making being required to complete tasks, and occasional changes in work setting. (R. 35–36, 73–75.) It was only with these additional limitations that the vocational expert found Plaintiff could not perform his past relevant work. (R. 74–75.) But the expert testified that a person with those additional limitations could nevertheless transfer skills with mathematics, computer skills, and organization of information to perform work as a billing clerk, cashier, or accounting clerk. (R. 75.) The ALJ incorporated the expert's testimony into his findings. (R. 35.) But he further found that "occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as the claimant, and which require skills acquired in the claimant's past relevant work but no additional skills." (R. 35.) The ALJ concluded that "a finding of 'not disabled' is appropriate under the framework of Medical-Vocational Rule 202.15

15

and Rule 202.07." (R. 36.)

Plaintiff argues that it was improper for the ALJ to rely solely on evidence that he could transfer skills to the sedentary jobs suggested by the vocational expert in finding that he was not disabled under the Rule 202 frameworks. He contends those frameworks require evidence that a claimant can do light work, and he argues the ALJ should instead have considered whether he could transfer skills under the heightened standard for transferability for a person of advanced age (55 years old and older) capable only of sedentary work under the Rule 201 frameworks. (Pl's Mem. at 9–10.) The Court disagrees.

Appendix 2 provides Medical-Vocational grids and rules for analyzing whether a claimant is disabled at step five, selected based on a claimant's maximum exertion level (sedentary, light, medium, or heavy and very heavy) set in the RFC. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 200.00(a), (c), 201.00, 202.00. Rule 202 covers a light work RFC, and uses the factors in 20 C.F.R. § 404.1568(d)(2) to analyze transferability for a claimant of advanced age. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(c). Rule 201 covers a sedentary work RFC, and uses a heightened standard for analyzing transferability for a claimant of advanced age. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(d)–(f); 20 C.F.R. § 404.1568(d)(4).

Rule 202 provided the appropriate grid because the ALJ found Plaintiff had a light work RFC, and Plaintiff did not challenge that finding. Since Plaintiff was also of advanced age at least from June 27, 2018, to the date of the determination, the proper analysis of transferability under Rule 202 was the general standard found in 20 C.F.R.

16

§ 404.1568(d)(2).

Plaintiff cites *Distasio v. Shalala*, 47 F.3d 348, 349 (9th Cir. 1995). The ALJ found the claimant capable of light work with limitations, but the vocational expert testified that the claimant was only capable of working sedentary jobs. *Id.* The ALJ denied disability based on Rule 202.14. *See id.* at 350. The court reasoned that "[t]he vocational expert's testimony established that, at best, [the claimant] could perform jobs that fall within the sedentary category. The Secretary has thus produced no evidence that [the claimant] is capable of any job other than sedentary work." *Id.* at 350. The court reversed "[b]ecause the Secretary failed to produce evidence that any job categorized as light work was available to [the claimant], but only produced evidence of sedentary work available to him, [so] the use of grid rule 202.14 as a framework for decisionmaking was not based on substantial evidence." *Id.*

The Ninth Circuit's analysis leaves out much about the specifics of the ALJ's RFC finding and the vocational expert's testimony, making any direct comparison difficult. Further, the current rules explicitly state that the grid is selected based on the maximum exertional ability in the RFC, which itself is developed using the medical and other evidence in the record, not the vocational expert's testimony about the jobs a claimant can do *based on the RFC*. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a). *See also Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10, 1983 WL 31251 at *2 (S.S.A. 1983). To the extent *Distasio* suggests that a vocational expert's testimony about the jobs a claimant could do is evidence that must be accounted for in selecting the grid, the Court questions the

17

continued vitality of this case.

In any event, here the vocational expert did not testify that Plaintiff was limited to only sedentary jobs based on his RFC. While the vocational expert testified that Plaintiff could transfer his skills to three sedentary jobs, this came in response to a hypothetical posed by the ALJ expressly limiting the RFC to sedentary work with additional limitations. Under the hypothetical, therefore, the vocational expert was not called upon to consider whether Plaintiff could transfer any skills to light work occupations. The expert's testimony was that even with this more restrictive exertional limit and non-exertional restrictions, an individual in Plaintiff's position could transfer skills to jobs available in the national economy. By contrast with *Distasio*, the expert here did not testify that Plaintiff's true abilities limited him to only sedentary work despite the ALJ finding he had the RFC to do light work. The ALJ did not err by considering the transferability of Plaintiff's skills under the Rule 202 framework.

Plaintiff next argues that the ALJ erred by failing to sufficiently explain his finding that Plaintiff had transferable skills. (Pl's Mem. at 11–13.) Plaintiff argues that the jobs identified by the vocational expert and the ALJ differ from accounting in the type of industry and the materials, productions, subject matter, and services involved, factors that impact transferability under 20 C.F.R. § 1568(d), yet the ALJ failed to explain the transferability finding in light of these differences. (Pl's Mem. at 11–13.) The Court disagrees. An ALJ may rely on a vocational expert's testimony regarding the transferability of skills if some of the identified jobs satisfy the claimant's residual functional capacity. *Swedberg v. Saul*, 991 F.3d 902, 906 (8th Cir. 2021); 20 C.F.R.

404.1566(e). Also, skills may be transferable even if the occupations in question do not align across all three factors, so long as some similarities exist. 20 C.F.R. § 1568(d). Finally, an ALJ need not cite every fact and explain in detail every finding so long as the determination provides sufficient detail for the Court to review the factual basis and determine whether it is supported by substantial evidence.

The vocational expert's testimony undoubtedly satisfies the transferability standard for a claimant of advanced age under Rule 202, as the expert identified jobs within Plaintiff's RFC to which several skills from Plaintiff's accounting job could transfer. The ALJ relied on that testimony when finding that Plaintiff's skills would transfer for the period when Plaintiff was of advanced age, June 27, 2018, to the determination date. On the other hand, the ALJ was not required to analyze transferability for Plaintiff under Rule 202 when he was closely approaching advanced age (April 1, 2017, to June 26, 2018), because transferability does not impact whether such a claimant is disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.09–.15. The Court concludes that the ALJ did not err.

## RECOMMENDATION

The Court respectfully recommends that:

1. Plaintiff's Motion for Summary Judgment [ECF No. 20] be **DENIED**;

2. Defendant's Motion for Summary Judgment [ECF No. 22] be **GRANTED**; and

3. **JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 25, 2022                              *s/ Hildy Bowbeer*
                                                 HILDY BOWBEER

19

                                                     United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).